UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ANTONIO SEWELL | CIVIL ACTION NO. 03-1545-P |
| versus | JUDGE HICKS |
| WARDEN, ET AL. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Antonio Sewell ("Petitioner") of the armed robbery of Willie Ashley. Petitioner was also adjudicated a multiple offender, and he received a life sentence. Petitioner raised several issues on direct appeal. State v. Sewell, 811 So.2d 140 (La. App. 2d Cir. 2002), writ denied, 840 So.2d 535 (La. 2003). He then filed this action seeking federal habeas corpus relief. It is recommended, for the reasons that follow, that relief be denied.

**Sufficiency of the Evidence**

Willie Ashley went to a Fina Mart on Jewella Avenue in Shreveport. He parked his Oldsmobile 98 car near the gas pumps, walked inside, made some purchases and returned to his car. As Mr. Ashley was getting into his car, he was confronted by a man, later identified as Petitioner, who was wearing a black and white plaid flannel shirt-jacket. Petitioner demanded Mr. Ashley's car and, when Mr. Ashley refused, Petitioner pulled a silver colored

.380 caliber pistol and shot Mr. Ashley twice in the left leg. One bullet lodged in the pelvic bone, and the other went through the victim's leg.

Petitioner also demanded Mr. Ashley give him his money, so Mr. Ashley surrendered his cash, driver's license and pager. Petitioner fled the scene in Mr. Ashley's car.

Shreveport Police Office Shawn Hinderberger was in his parked patrol car writing a report when he heard two gunshots. A minute or two later, he heard the scrape of metal as a car "bottomed out" in a nearby intersection. He looked up and saw a car without its headlights on stop about one block from where Officer Hinderberger was parked. The officer turned his spotlight on the driver, who was alone in the car, and the driver immediately got out of the car and ran. Hinderberger issued a radio alert that described the fleeing suspect. He drove his car around the area, but lost sight of the suspect. As he circled the block, he heard Officer D. W. Ramsey radio that he had the suspect in custody.

Hinderberger arrived to find Ramsey wrestling Petitioner in the middle of the road. Officer Hinderberger saw a chrome-plated pistol on the road about two feet from Petitioner's hand. He also saw a plaid/checkered shirt on the road about five or ten feet behind Petitioner. Two witnesses who were inside the Fina Mart at the time of the robbery identified the shirt as the one worn by the robber.

Mr. Ashley was treated for his wounds at LSU Medical Center. Detective Rod Johnson interviewed Mr. Ashley at the hospital, and the victim recounted that the robber was

a black male with a goatee and mustache, wearing a black and white flannel jacket, light blue jeans, white tennis shoes and possibly a black skull cap.

Officer Ramsey brought Petitioner to the same hospital for treatment to a cut on his hand. Detective Johnson reached into Petitioner's pockets and found some folded paper currency that was wrapped around Mr. Ashley's driver's license.

The officers tried to prevent contact between Mr. Ashley and Petitioner at the hospital, but Mr. Ashley testified that he did see Petitioner walk past his room. Detective Robinson went to Mr. Ashley's home a day or so after the robbery and showed him a six-person photographic lineup. Mr. Ashley picked Petitioner without hesitation.

Richard Beighley, a firearms identification expert employed by the North Louisiana Crime Lab, testified that he performed tests and made a positive match between a test bullet fired from the pistol found near Petitioner at the time he was arrested and a bloody bullet found in the Fina Mart parking lot.

Mr. Ashley made an in-court identification of Petitioner. He testified that he also identified Petitioner the night of the crime outside the Fina Mart. Petitioner said he was on a stretcher, and ambulance workers rolled him near a police car to view Petitioner. Mr. Ashley testified that he made a positive identification of Petitioner as the robber. Tr. 461-463.

Ashley's testimony about the identification outside the Fina Mart was in conflict with the written report prepared by Officer Ramsey, who was not available to testify at trial.

Officer Ramsey wrote in his report that he placed Petitioner in his patrol car, drove back to the Fina Mart, and:

> "Upon my arrival to the scene, I had the victim try and identify the subject as the one who shot him. The victim (Willie Ashley) stated he wasn't sure because the subject was wearing a black ski mask. I then left the scene with the subject transporting him to the detective office."

Tr. 18. Mr. Ashley was asked about this conflicting account on cross-examination, but he was adamant that he did identify Petitioner at the Fina Mart that night and that the police officer would be wrong if he wrote otherwise in his report. Tr. 470-71. The jury, on a vote of ten to two, returned a verdict of guilty of armed robbery. Tr. 627-28.

Petitioner challenges the sufficiency of the evidence to support that conviction. He raised the same arguments on direct appeal. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

Petitioner, on appeal, pointed to the conflict between Mr. Ashley's testimony and Officer Ramsey's report. He also argued that Mr. Ashley had first denied giving a statement at the hospital but later admitted giving a statement. This last point seems to have been largely a matter of Mr. Ashley not clearly understanding the question. When Mr. Ashley was asked if he was "interviewed" or gave a "statement" at the hospital, he said no. Tr. 473 &

483. But when the next question asked, "Did you talk to Detective Johnson?", Mr. Ashley answered, "Yes, sir." He then described what he told the detective.

Petitioner also argued that the gun and jacket were not found in his possession, but they were found very near him. Petitioner also pointed out that Mr. Ashley had claimed that $220 was stolen from him, but only $20 was found on Petitioner, and the stolen pager was never found. There were also no fingerprints found to match Petitioner's in the car or on the gun. There was, however, Mr. Ashley's driver's license found in Petitioner's pocket and a match between a bullet that passed through Mr. Ashley's leg and a gun found within feet of Petitioner when he was arrested.

The state appellate court conducted a detailed discussion of the evidence, noted the arguments made by Petitioner and addressed them under the Jackson standard. It concluded that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convict Petitioner of armed robbery. The victim's testimony may have been subject to attack, but it was corroborated in part by testimony from other witnesses and the physical evidence such as the driver's license, jacket, gun and matching bullet.

The Louisiana appellate court invoked, recited and applied the Jackson standard on Petitioner's direct appeal. Thus, its decision was not "contrary to clearly established Federal law," so Petitioner can obtain habeas relief only if the state court's decision was an "unreasonable application" thereof. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). Under the unreasonable application clause, a federal court is permitted to grant

the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the State court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the State court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc), cert. denied, 123 S.Ct. 963 (2003).

The state court conducted a thorough review of Petitioner's argument, addressed each of the points he raised, and resolved them in a reasonable manner. Sewell, 811 So.2d at 142-49 and Tr. 748-64. Petitioner correctly pointed out in the state court and in this proceeding that Mr. Ashley's testimony was inconsistent in some respects, but the state court correctly deferred to the jury's credibility assessment. There is no basis upon which to characterize the state court's decision as objectively unreasonable, so habeas relief must be denied.

**Identification**

Petitioner next argues that he is entitled to habeas relief because the trial judge should have suppressed the identification evidence. The record indicates that Mr. Ashley saw

Petitioner in police custody at the Fina Mart just after the crime and again, soon afterwards, at the hospital.

Detective Paul Robinson testified at a hearing held on a motion to suppress the identification. He described how he prepared a six-person photographic lineup by putting descriptors in a state-wide computer identification system, which produces photographs of persons who meet that description. He told Mr. Ashley that the suspect may or may not be in the lineup, that the photographs might be old or new, that lighting can affect the appearance of skin tones, and that hairstyles may be different. Mr. Ashley "positively without hesitation" identified Petitioner. Tr. 189-92. The trial judge denied the motion to suppress but did not offer reasons.

Petitioner argued on appeal that the photographic lineup identification was tainted by the victim's prior confrontations with Petitioner. The potential inconsistencies in the victim's statements, noted above, were also raised. Tr. 702-04.

The constitutionality of pretrial identification procedures uses a two-prong analysis. The first question is whether the identification procedure was impermissibly suggestive. If the answer is yes, the second question is whether there was a substantial likelihood of irreparable misidentification. Manson v. Brathwaite, 97 S.Ct. 2243 (1977).

The state appellate court reviewed the claim under the Manson standards. It noted that one-on-one confrontations between a suspect and a victim are not favored, but they are permissible when justified by the circumstances, such as when the accused is apprehended within a short time after the crime and is returned to the scene of the crime for an on-the-spot

identification. Such prompt identification may risk prejudice to the validity of future identifications, but the state Court of Appeal noted that it has the positive aspect of promoting accuracy and expediting the release of innocent suspects. Sewell, 811 So.2d at 150. The Court of Appeal found that the identification at the Fina Mart was justified under the circumstances of such a prompt arrest. It conducted a careful review of the five factors made relevant by Manson, 811 So.2d at 150-51, and it concluded that the trial court did not err in allowing the identification testimony.

There is no evidence that Officer Ramsey or any other officers involved in the return of Petitioner to the crime scene did or said anything, other than the presentation of Petitioner, that encouraged any identification of Petitioner as the robber. A showup or crime scene identification has its drawbacks, but it has the benefits cited by the Court of Appeal, and such a prompt opportunity for identification might also be desirable when a victim has been shot or seriously wounded and it is not known whether he will later be able to recall the events or testify about them. There is no evidence that the photographic lineup itself was unduly suggestive or conducted in any improper fashion.

When a state court applies general legal principles, such as those that govern this claim, the application can demand a substantial element of judgment. As a result, the federal courts afford the state courts more leeway in reaching outcomes in case-by-case determinations. Yarborough v. Alvarado, 124 S.Ct. 2140, 2149 (2004). The state appellate court applied the general principles of Manson to the specific facts of this case in a careful fashion and reached a reasonable decision within the meaning of Section 2254. Petitioner's

principal arguments are not that the police did anything unduly suggestive but that the victim, Mr. Ashley, was not credible when he testified about the identification at the crime scene. That credibility issue was properly left to the jury. The relevant legal issues surrounding the admissibility of the evidence were resolved in a reasonable manner.[1] No habeas relief is merited on this issue.

**Habitual Offender: Sufficiency of the Evidence**

Petitioner repeats in his brief to this court an argument he made on direct appeal that the record of the habitual offender hearing was not complete because of a lost tape recording. Petitioner urged that the absence of the tape required the habitual offender adjudication be vacated for lack of sufficient evidence.

Petitioner's brief to this court omits a description of what happened in the state courts after he first made this argument. The Court of Appeal, on its own motion, remanded the case to the trial court for a determination of whether the record was complete and, if needed, a new hearing. Tr. 710. The trial judge entered an order explaining that the November 14, 2000 evidentiary hearing at which the relevant evidence was received *was* transcribed and in the record. The judge had stated his intention at the end of that hearing to later issue a written opinion adjudicating Petitioner as a fourth felony offender. Tr. 630, 670. Instead, he ruled in open court on December 13, 2000 that Petitioner was a third felony offender. (He

---

[1] Federal courts have also permitted identification testimony despite a "show up" or crime scene identification. See Livingston v. Johnson, 107 F.3d 297, 309-11 (5th Cir. 1997).

held that one of the prior convictions should not count.) The event for which the tape recording was lost was the December 13, 2000 ruling at which the trial judge did not receive evidence but merely gave reasons for finding Petitioner to be a third felony offender. The trial judge advised the Court of Appeal that the evidentiary record was adequately complete to permit appellate review. Tr. 721-23.

The Court of Appeal observed that Petitioner did not file a supplemental brief that set forth any arguments that remained after the trial judge's explanation of the events. The Court went on to find that adequate evidence had been submitted that Petitioner committed the prior felonies. Sewell, 811 So.2d at 151-53. Petitioner has not articulated any evidentiary inadequacy with respect to the habitual offender adjudication, so no relief is merited on this claim.

**Excessive Sentence**

Petitioner argues, citing primarily state court law, that his life sentence is excessive. By arguing the issue to the state court exclusively in terms of state law (see appellate brief at Tr. 705-08), Petitioner likely has not exhausted a federal claim with respect to his sentence that is cognizable on habeas review. See Baldwin v. Reese, 124 S.Ct. 1347 (2004).

Assuming exhaustion, the state court observed that Petitioner had not alleged exceptional circumstances that might warrant a sentence less than the statutorily mandated life sentence. Sewell, 811 So.2d at 154. A state court's sentencing decision is not generally subject to a constitutional challenge in a habeas proceeding unless it is shown that the sentence was outside the statutory limits or unauthorized by law. Haynes v. Butler, 825 F.2d

921, 923-24 (5th Cir. 1987); Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000). Recent decisions from the Supreme Court also make plain that any severity or proportionality attacks on the sentence in this case do not come close to meriting relief. See Lockyer v. Andrade, 123 S.Ct. 1166 (2003) and Ewing v. California, 123 S.Ct. 1179 (2003). Petitioner also complains that the trial judge did not comply with La. C. Cr. P. art. 894.1 by giving detailed reasons for the sentence, but failure to comply with that state law rule is not reviewable by federal habeas corpus. Haynes, 825 F.2d at 924.

**Supplemental Boykin Claim**

Petitioner filed, after briefing was complete, a motion to supplement (Doc. 20) to add an argument that one of his prior felonies, unauthorized use of a movable, was not obtained pursuant to a valid guilty plea so it could not be used to enhance his current sentence. Petitioner does not identify any particular defect in the plea. He simply argues that he was not advised of his rights as required by Boykin.

Counsel objected at the habitual offender hearing that the transcript of the unauthorized-use guilty plea showed that the judge advised Petitioner of his right to a trial by jury but did not advise of the right to elect a trial by judge. He also complained that the transcript did not prove that the judge gave advice regarding the right to appeal or ask for reconsideration of a sentence. Tr. 659-60. The prosecutor responded that Boykin did not require the matters complained of. Defense counsel could not cite any authority to support his argument. Tr. 662-64.

It does not appear that counsel included any argument related to this claim in the appellate brief or that Petitioner included the argument in his pro se application for a writ of discretionary review. Habeas relief shall not be granted unless it appears that the applicant has exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A).

The Court of Appeal, despite the lack of briefing of an attack on the predicate offenses, reviewed the record and found that the prosecution met its burden of proving the existence of the prior guilty pleas and that Petitioner was represented by counsel when the pleas were entered. Certified minutes and transcripts of the pleas also showed that Petitioner was informed of and waived his right to trial by jury, his privilege against self-incrimination and his right to confront his accusers. Petitioner has not demonstrated that the Court of Appeal's decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **DENIED** and that Petitioner's complaint be **DISMISSED WITH PREJUDICE.**

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 25th day of April, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE